UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | NO. 3:22-cr-5 (OAW) |
| : | |
| DAVID CIANCIMINO : | |
| : | |

## ORDER DENYING SENTENCE REDUCTION

**This action** is before the court upon David Ciancimino's Motion for Reduction of Sentence ("Motion"). ECF No. 58. The court has reviewed the Motion; the supplements to the Presentence Investigation Report provided by the United States Probation Office, ECF Nos. 59 and 60; the government's response to the Motion, ECF No. 63; Dr. Ciancimino's supplements to the Motion, ECF Nos. 61, 64, 65, and 66; and the record in this case. The court is fully advised in the premises. For the reasons discussed herein, the Motion is **DENIED.**

On September 23, 2021, Dr. Ciancimino was arrested pursuant to a warrant issued in connection with a criminal complaint alleging that he had been prescribing controlled substances without a medical purpose. On January 24, 2022, Dr. Ciancimino waived his right to be indicted and pleaded guilty to a one-count information charging him with distribution of a controlled substance outside the scope of professional practice and not for a legitimate purpose, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Dr. Ciancimino's criminal conduct included prescribing Adderall, a Schedule II substance, and Xanax, a Schedule IV substance, without a proper medical purpose. The Drug Enforcement Agency investigated Dr. Ciancimino's prescribing practice by having two undercover agents pose as new patients. Over the course of several months, Dr.

1

Ciancimino prescribed the undercover agents Adderall and Xanax, and even increased their prescribed dosages, despite the "patients" lacking any apparent need for the drugs and without Dr. Ciancimino asking them any medically relevant questions, even after they admitted to having been buying the drugs from nonmedical sources without prescriptions. Dr. Ciancimino even allowed the agents to pick up one another's prescriptions if one was unable to make an appointment (provided he was paid double, to cover both "patients").

The undersigned presided over the movant's sentencing hearing on May 26, 2022. The court reviewed the facts of the case, the Presentence Investigation Report, the sentencing memoranda submitted by both parties, and the Sentencing Guidelines, ultimately imposing a term of imprisonment.[1] The court agreed with the parties and Probation that Dr. Ciancimino's total offense level was 23, and that he had no criminal history points, placing him in criminal history category I. These factors yielded a Guidelines range of 46–57 months of imprisonment. Dr. Ciancimino was sentenced to 46 months in prison, which was the low end of the Guidelines range.

Since his sentencing, the Guidelines have been amended to include a new Section 4C1.1, which reduces by two the offense level of a defendant who has no criminal history points and whose offense does not involve certain aggravating factors. This amendment (Amendment 821) is retroactively applicable. U.S.S.G. 1B1.10.

Dr. Ciancimino now asserts that he is eligible for a sentence reduction pursuant to Amendment 821, and he asks the court to reduce his term of imprisonment to the low end of what the Guidelines range would be if he were sentenced today, that is, to 37 months.

---

[1] Dr. Ciancimino's sentence also included supervised release, a fine, forfeiture of certain funds, and the mandatory assessment, but these parts of his sentence are not at issue here.

Whether to apply the retroactive Guidelines amendment to a particular sentence is never automatic or routine. Before employing such a sentence reduction, the court must find: first, that the defendant is eligible; and second, that, in the discretion of the court, such a reduction is merited. *Dillon v. United States*, 560 U.S. 817, 826 (2010); U.S.S.G. 1B1.10.

The first inquiry is answered by application of the new Guidelines to the defendant's circumstances at the time of sentencing. U.S.S.G. 1B1.10(b). Here, this means determining whether Dr. Ciancimino had any criminal history points (he did not), and whether his offense involved any of several aggravating factors enumerated in the new section of the Guidelines (it did not).[2] Thus, the court finds that Dr. Ciancimino is eligible for a reduction of his prison sentence.

Next, the court must evaluate the sentencing factors set out in 18 U.S.C. § 3553(a) to determine whether a reduction is warranted. In assessing those factors, the court also may review a movant's conduct since their incarceration.

As it did at sentencing, the court acknowledges that this is a nonviolent crime, and that Dr. Ciancimino is older than most defendants and has certain attendant health issues, which he asserts have worsened during his incarceration. The court now recognizes that while in prison, Dr. Ciancimino has been issued no disciplinary citations, he has completed numerous programs offered at his facility, he works several inmate jobs, and he has paid the $25,000 fine imposed as part of his sentence. This is all to his credit.

---

[2] The court notes that the reduction does not apply where a defendant's criminal conduct resulted in death or serious bodily injury, and that testimony was offered at sentencing which suggested that Dr. Ciancimino had contributed to a patient's overdose by improperly prescribing high doses of Xanax. As the court then stated (and now reiterates), this allegation was not proven and so will not be considered.

However, the court also reiterates that though Dr. Ciancimino's criminal conduct was nonviolent, it was serious, nonetheless.  Dr. Ciancimino used his medical practice to facilitate and to mask his illegal distribution of controlled substances.  Criminal defendants frequently appear before this court for their illegal drug distribution, though without the cover of a medical practice.  In evaluating Dr. Ciancimino's crime, the court must consider the sentences imposed upon other defendants who also distribute Schedule II substances (often fentanyl).

As for the particular substance that Dr. Ciancimino illegally was distributing, the government noted in its underlying sentencing memo that "Adderall is a dangerous, Schedule II controlled substance, which . . . contains a combination of amphetamine and dextroamphetamine, [both of] which are central nervous system stimulants . . . ." Government's Memorandum in Aid of Sentencing 3, ECF No. 46. The government noted that it "has a high potential for abuse and addiction," and that it can mask the effects of other drugs (such as opioids), thereby increasing the likelihood that Adderall can cause an accidental overdose when an addict or "patient" also is using other drugs.  *Id.* at 3–4.

The government distinguished Dr. Ciancimino from streel level drug dealers, explaining that he was "not a low-level courier with a limited role in a drug-trafficking conspiracy."  *Id.* at 3.  Instead, the government explained at sentencing that he had "reaped all the monetary benefits of his scheme because writing unlawful prescriptions needs no foot soldiers, drug mules, or other drug-trafficking participants."  *Id.*  It highlighted how Dr. Ciancimino was being prosecuted for the drugs that he, alone allowed into the community, even when an undercover agent had told him that they were further distributing the drug to another individual, which exacerbated the public health risk.  *Id.*

Undoubtedly, it would have been easy and expeditious for the court to have seen that Dr. Ciancimino received a sentence at the low end of the Guidelines range as it existed at the time of sentencing, and to have simply adjusted it to the bottom of the range as revised by Amendment 821 (and as proposed by the movant, at ECF No. 58).  Instead, the undersigned has taken the time and effort to assess Dr. Ciancimino's criminal conduct, and to determine whether to so exercise its discretion in ensuring a sentence that remains no greater than necessary to carry out the purposes of 18 U.S.C. § 3553(a). Even then, the court has not viewed Dr. Ciancimino's case, crime, or motion in a vacuum. It has considered sentence reduction motions that it has granted, as in *United States v. Margaret Boisture* (22-cr-141), a case involving a financial employee who had used her position to commit wire fraud against her employer; sentences for drug crimes, such as in *United States v. Daniel Oliver* (22-cr-187-1), which involved a fentanyl sale that resulted in a fatal drug overdose; and even drug cases wherein the court has determined that Amendment 821 is inapplicable, as with *United States v. Richard Colon* (18-cr-140-7) and (09-cr-294-1).  Having considered the context presented by these and other cases, the court determines that the instant motion properly should be denied.

Dr. Ciancimino does not now seek the "sentence of probation" he requested at sentencing.  *See* Sentencing Memorandum on Behalf of David Ciancimino 23, ECF No. 44. Still, he "breached the trust put in medical professionals" that he otherwise enjoyed throughout his "30-year career in psychiatry."  *Id.* at 1.  At sentencing, the government sought "a significant term of imprisonment" for what undeniably was a serious crime.  *See* Government's Memorandum in Aid of Sentencing 4, ECF No. 46.  Far from the theft of money by a financial employee (as in *Boisture*), the movant used his medical profession

5

to facilitate and to hide his criminal drug distribution, likely appreciating as well as anyone in society the dangers of substance abuse and addiction. And, through his criminal acts, Dr. Ciancimino contributed to the drug epidemic just as a street-level drug dealer who overlooks a buyer's potential addiction in favor of the drug dealer's own financial gain.

Even now, though he asserts through counsel that he takes "full responsibility" for his crime, Dr. Ciancimino still insists that he received $200 payments "for each office visit," *see* Motion at 1, rather than in exchange for the *drug prescriptions* that he illegally wrote for the undercover agents who posed as patients, *see* Government's Memorandum in Aid of Sentencing 1, ECF No. 46. However, at sentencing, the government persuasively argued that Dr. Ciancimino collected $200 payments for each prescription (and not for each office visit), as supported by the fact that he collected such payments on behalf of patients who were not even present for medical appointments, such as when an undercover agent would remit a $400 payment to obtain a prescription for that agent and for another "patient" who did not appear for an appointment, or when Dr. Ciancimino would collect such payment for a prescription via Venmo, while on vacation. *See* Government's Memorandum in Aid of Sentencing 7–8, ECF No. 46. At the same time, the court recognizes that the defendant "acknowledged and took responsibility for writing 20 unlawful prescriptions for Adderall to two undercover law enforcement officers," and that he wrote "prescriptions for Adderall and Xanax" for such agents. *Id.* at 1. Such conduct not only violates the law, but also Dr. Ciancimino's Hippocratic Oath, so as to justify the need for his sentence to provide sufficient general and specific deterrence. There was no indication that Dr. Ciancimino was in financial need, unemployed, or suffering from an addiction of any kind, so as to have impacted his judgment in any way.

Thus, it appears that his crime was one of opportunity that is present for every doctor, such that a significant term of incarceration is necessary to deter others similarly situated from repeating his violations.  And, as the court noted at sentencing, medical doctors arguably are more likely than others in society to become aware of this sentence and to be deterred by it from engaging in similar illegal drug distribution.

The undersigned regularly makes a conscious effort to avoid being anchored[3] to the sentencing range recommended by the Guidelines, such as by carefully considering the sequence in which it reviews the briefs and other materials submitted by the parties and by Probation.  The same methods were employed in review of the present motion.  Still, after careful consideration, even while attempting to avoid unnecessary sentencing disparities among similarly situated defendants convicted of similar crimes (and those whose sentences have been reduced), the court finds that the seriousness of this offense, and its commission by a doctor, together with the goals of specific and general deterrence, warrant its imposition as no greater than necessary to carry out the purposes of § 3553(a).

Accordingly, it hereby is **ORDERED AND ADJUDGED** that the Motion is **DENIED.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 20th day of May, 2024.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] *See* Adrian Furnham & Hua Chu Boo, A Literature Review of the Anchoring Effect, 40 J. of Socio-Economics 35 (2011), available at https://www.sciencedirect.com/science/article/abs/pii/S1053535710001411 [https://perma.cc/GR32-D4NU], (last visited May 20, 2024); Piottr Bystranowski et al, Anchoring Effect in Legal Decision-Making: A Meta-Analysis, NIH: Nat'l Lib. Of Med., available at https://pubmed.ncbi.nlm.nih.gov/33734746/ [https://perma.cc/5289-E99F], (last visited Jan. 23, 2024).